# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

SAMUEL WESTMORELAND,

                    Defendant.

Crim. No. 12-175 (JRT/TNL)

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE AND REDUCTION IN SENTENCE**

---

Katherine T. Buzicky, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Sarah Weinman, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415, for defendant.

Defendant Samuel Westmoreland pled guilty to being an armed career criminal in possession of a firearm, and the Court sentenced him to 180 months imprisonment and five years of supervised release on November 28, 2012. (Sentencing J. at 1–3, Nov. 28, 2012, Docket No. 33.) The Court applied a downward variance from the guideline range and imposed a 180-month mandatory minimum sentence. (SOR at 1, 3, Nov. 28, 2012, Docket No. 34.) The Court did so in part because of Westmoreland's poor health and his need for treatment and the nature of his prior offenses. (*Id*. at 3.) The Court noted that because Westmoreland had serious medical issues, it recommended placement at FMC Rochester or a similar facility for purposes of medical treatment. (Sentencing J. at 2.)

Westmoreland is now 65 years old and is currently serving his sentence at FMC Rochester with a set release date in September 2026.   (Compassionate Release Investigation ("CRI") at 1, Jan. 3, 2022, Docket No. 41.)  He continues to suffer from serious health issues.  (Mot. for Com. Release & Reduced Sentence ("Mot."), Ex. 1 at 3–5, Sept. 30, 2021, Docket No. 38-1.)[1]  He is generally confined to a wheelchair, has a myriad of aliments, including heart problems, diabetes, hypertension, and obesity, and suffers from mental illnesses, among other serious conditions.   (*Id.*)   Westmoreland moved for compassionate release and a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) because of his age and serious health conditions.[2]

The Court will find that extraordinary and compelling circumstances warrant compassionate release after consideration of the relevant policy statement and the § 3553(a) factors because of Westmoreland's serious and worsening health problems. The Court will therefore grant Westmoreland's motion pending funding approval for his approved assisted care facility—Watchen Homes Board and Care, reduce his term of imprisonment to time served effective January 21, 2023, and maintain Westmoreland's term of supervised release at the five years previously imposed. Pending funding for

---

[1] Due to inconsistencies in pagination within the exhibit, for clarity the Court uses CM/ECF pagination.

[2] Consistent with the relevant Bureau of Prison's Program Statement, the Court uses the terms "compassionate release" and "reduction in sentence" interchangeably.  *See* Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) at 1, https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Watchen Homes Board and Care, Westmoreland may be released to a residential reentry center approved by the probation officer.

## DISCUSSION

### I.      STANDARD OF REVIEW

The First Step Act, passed in December 2018, amended the procedure for compassionate release.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)).  The law allows defendants, in addition to the Bureau of Prisons ("BOP"), to move for compassionate release.  18 U.S.C. § 3582(c)(1)(A). However, a defendant may only bring such a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*  Once the Court receives a motion from the BOP or a motion from a defendant after the administrative remedies have been exhausted, the Court may reduce the defendant's sentence if, after considering the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) as they are applicable, the Court finds that "extraordinary and compelling reasons warrant such a reduction" and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A).

### II.     ANALYSIS

Westmoreland requested compassionate release by the BOP under the criteria for

"debilitated medical conditions," but the BOP denied his request.  (Gov't's Ex. 4 at 2, Apr. 29, 2022, Docket No. 46.)  The United States argues that, while Westmoreland's medical conditions constitute extraordinary and compelling circumstances pursuant to § 3582(c)(1)(A), the Court should nevertheless deny Westmoreland's motion because he poses a risk to the community and the § 3553(a) federal sentencing factors weigh against release.

Because the parties agree that Westmoreland has established that he has exhausted his administrative remedies and also agree that Westmoreland's significant medical conditions constitute extraordinary and compelling circumstances, the Court will only address whether a reduction in sentence is consistent with the Sentencing Commission's Policy Statement ("Policy Statement") regarding sentence reduction, considering the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) as they are applicable.

### III.    SENTENCING COMMISSION POLICY STATEMENT

Under the Policy Statement, a court considering compassionate release must also consider whether the defendant is a danger to the safety of any other person or to the community as defined in 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13(2).  Section 3142(g) instructs courts to consider:  (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the person's history and characteristics, including—among other things—the person's physical condition, family ties, community

ties, past conduct, criminal history, record of appearance at court proceedings, and whether the offense was committed while on probation or other supervised release; and (4) the nature and seriousness of the danger to any person or the community.  18 U.S.C. § 3142(g).

As to the first factor, the nature and circumstances of the offense, the Court acknowledges that Westmoreland's offense of conviction is serious.  His prior convictions qualified him for armed career criminal status, and he pled guilty to being a felon in possession of a firearm, a sawed-off shotgun in his home.  (PSR at F.1, 2, Dec. 3, 2012.)  Still, the most recent of his predicate offenses that qualified him as an armed career criminal occurred in 1995, twenty-seven years ago.  (*Id.* at 3.)  The other two predicate offenses occurred in 1983 and 1989.  (*Id.*)  As such, those felonies were too remote to even count toward his criminal history.  U.S.S.G. §4A1.1, comment 1.  The nature of the gun qualified Westmoreland for a higher base offense level and sentencing range. U.S.S.G. § 4B1.4(b)(3)(A).  His most recent offense—the firearm possession offense for which is currently incarcerated—occurred more than a decade ago.

Together, these situational factors mitigate the circumstances of the offense, and additionally weigh against the likelihood of recidivism, when coupled with Westmoreland's age, the myriad of health conditions for which he suffers, and the fact that Westmoreland will be subject to a five-year term of supervision under strict conditions upon release.  (*Compare* Mariel Alper, et al., *2018 Update on Prisoner*

*Recidivism: A 9-Year Follow-up Period (2005-2014)*, U.S. Department of Justice (May 2018), *available at* https://bjs.ojp.gov/content/pub/pdf/18upr9yfup0514.pdf last visited Oct. 3, 2022) (discussing higher recidivism rates for state offenders), *with* Kim Steven Hunt, et al., *Recidivism Among Federal Violent Offenders*, United States Sentencing Commission (January 2019), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf (last visited Oct. 3, 2022) (discussing lower recidivism rates of federal prisoners when compared), *and* The Florence V. Burden Foundation, *The High Costs of Low Risk: The Crisis of America's Aging Prison Population*, (July 2014), *available at* https://www.osborneny.org/assets/files/Osborne_HighCostsofLowRisk.pdf (last visited Oct. 3, 2022 (showing the decline of arrest rates in aging adults.)  Moreover, Westmoreland has been in custody since his arrest in May 2012 and has served 70 percent of his sentence.

As to the second factor, the weight of the evidence against the person, there is no dispute that Westmoreland pled guilty to the offense, suggesting that the weight of the evidence against him was strong.  But the Court also notes that Westmoreland accepted responsibility for the offense and received a related adjustment.

As to the third factor, the person's history and characteristics, Westmoreland's history and characteristics weigh both for and against relief.  Westmoreland's criminal history is admittedly not insignificant.  It includes two burglaries from 1979, when he was

22 years old.  (PSR at 4-5.)  In 1983, Westmoreland was convicted of a robbery at age 26.

(*Id.* at 5.)   In 1989, he was convicted of assaulting an undercover officer and was

sentenced to a year and day.  (*Id.*)  In 1995, he was convicted of second-degree assault

for holding a butcher knife and yelling at officers.  (*Id.* at 6.)  Westmoreland was placed

on probation.  (*Id.*)  He violated his probation once and was ordered to serve thirty days.

(*Id.*)  He successfully completed his probation in 2002.  Ten years later, Westmoreland

committed his first federal offense and was sentenced to fifteen years for possessing a

firearm, for which he is currently incarcerated. In addition to this criminal record,

Westmoreland has been disciplined while in prison most seriously for a mutual assault

with another inmate that Westmoreland appears to have instigated and resulted in the

other inmate needing medical attention.[3]  (Gov't's Ex. 3 at 3, Apr. 29, 2022, Docket No.

45.)  These facts weigh against relief.

However, there are also mitigating circumstances that weigh strongly in favor of

release.  First, as noted above, Westmoreland's career offender status was imposed in

part based on 27-year-old and 39-year-old convictions, and he has been in custody since

his arrest in 2012.   Second, Westmoreland's physical condition has deteriorated

---

[3] BOP records indicate that Westmoreland has incurred several high and moderate level disciplinary sanctions while in custody includes: threatening bodily harm (seven sanctions); assault without serious injury (four sanctions); fighting with another person (two sanctions); possessing stolen property; refusing work or programming assignment (four sanctions); refusing to obey an order (three sanctions); interfering with staff; being insolent to staff (three sanctions); accepting money without authorization; phone abuse (two sanctions); interfering with count; and destroying property over $100.  (CRI at 2.)

significantly since then.  As described in BOP records, Westmoreland currently suffers from a variety of ailments and mental health conditions.  (Mot. Ex. 1 at 3; CRI at 2.)  This includes uncontrolled Type 2 diabetes; paroxysmal atrial fibrillation with rapid ventricular response; several cardiac conditions including a history of heart attack and non-sustained ventricular tachycardia; a history of gangrene with severe sepsis; a history of deep venous thrombosis, anemia, and thrombocytopenia; incisional ventral hernia; chronic obstructive pulmonary disease; obesity; hypertension and hypercholesterolemia; and leg/knee problems requiring use of a wheelchair.  (Mot. Ex.  1 at 3–4.)  In 2019, Westmoreland's uncontrolled diabetes led him to develop "necrotizing fasciitis with Fournier's gangrene, severe sepsis, diabetic ketoacidosis, pneumonitis, acute respiratory failure requiring intubation and intensive wound care."  (*Id.* at 4.)  These conditions required "a prolonged hospitalization" of four months that ultimately resulted in Westmoreland's transfer to the Federal Medical Center in Rochester.  (*Id.*)  He has developed several abscesses since that time.  (*Id.*)

Westmoreland also has anxiety disorder with a history of panic attacks and emotional lability under stress, a history of depression, and is edentulous.  (*Id.*)  He has requested a Do Not Resuscitate, Do Not Intubate ("DNR/DNI") status.  (*Id.*)  All of his medical and mental conditions are complicated by Westmoreland's refusal to cooperate with his medical care. (*Id.*)  A BOP physician has explained that Westmoreland's medical and mental conditions put him "at high risk for a poor outcome should he contract

[COVID-10] due to his underlying co-morbidities." (*Id.* at 5.) As Westmoreland's counsel correctly notes, the "number and severity of Mr. Westmoreland's medical and mental-health ailments are truly extraordinary." (Def.'s Mem. at 4, May 5, 2022, Docket No. 48.)

Furthermore, Westmoreland has identified an updated release plan in his motion, indicating that he will reside at a probation-approved facility contingent on funding, Watchen Homes, an assisted-care facility that specializes in providing "24-hour support and assisted living services to individuals in transition, primarily from prison." (CRI at 2.) The staff at the facility are "aware of Mr. Westmoreland's incarceration and supervised release requirements," and have "previously worked with the BOP to achieve [county funding] prior to release." (*Id.*) His sister filed the instant motion, and it appears Westmoreland has necessary familial support between his sister and his children. (*See* Mot. Ex. 1 at 2.) The Court finds that this release plan weighs in favor of release. *See United States v. Bellamy*, No. 15-165(8), 2019 WL 3340699, at *6 (D. Minn. July 25, 2019) However, the Court will grant Westmoreland's request for release to Watchen Homes contingent on Westmoreland obtaining the necessary funding. In the event Westmoreland is unable to obtain county funding prior to his release, Westmore may be released to a probation-approved residential reentry center for a period of up to 180 days. (*See* CRI at 2.)

As to the fourth factor, the nature and seriousness of the danger to any person or the community, the Court doubts that Westmoreland presents a danger to any person or

the community in his present state.  He is wheelchair-bound and while he is independent with basic activities of toileting, bathing, feeding, and dressing, his activities are generally "restricted to his bed or his wheelchair for the vast majority of the day."  (Mot. Ex. 1 at 5.)  While Westmoreland has incurred several disciplinary sanctions while incarcerated, such incidents appear to be situationally specific and capable of reform, owing to his incarceration environment.  He has also been sanctioned for these incidents.  (*See* CRI at 2.)  Such conduct is also likely to be significantly reduced by his release to a care facility designed for rehabilitation and reentry and the strict terms of his five-year supervised release term.  While Westmoreland does have a criminal history, most of his offenses, including his violent offenses, are twenty-seven or more years old.  (PSR at 3.)  His most recent offense is now more than ten years old.  The age of his prior offenses combined with Westmoreland's current physical condition leads the Court to conclude that he presents a low risk of danger to any person or the community.  Any limited risk can also be mitigated by supervision.

The seriousness of Westmoreland's offense and criminal history "are wholly outweighed by [Westmoreland's] serious, deteriorating conditions and dependence upon . . . a wheelchair" and his physical restrictions relating to his daily activities.  *United States v. McGraw*, No. 02-18, 2019 WL 2059488, at *4 (S.D. Ind. May 9, 2019).  With appropriate supervision, the Court finds that Westmoreland is unlikely to pose a danger to any person or the community.

## IV.   OTHER SENTENCING FACTORS

The Court has also considered the remaining sentencing factors set forth in 18 U.S.C. § 3553(a) and finds that a reduction in Westmoreland's term of imprisonment, with his five-year term of supervised release, is sufficient but not greater than necessary under the circumstances.

Most of the relevant factors, including the nature and circumstances of the offense and the history and characteristics of the defendant, have already been discussed above.

Two important factors remain.  First, the Court considers "the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2).  The Court finds that the sentence served, combined with a five-year period of supervised release, sufficiently reflects the seriousness of his conduct, promotes respect for the law, provides just punishment, and affords adequate deterrence.  Westmoreland has already served a significant portion of his sentence and has done so under difficult circumstances given his deteriorating health. *See McGraw*, 2019 WL 2059488, at *5 (finding that defendant's health issues made his sentence "significantly more laborious than that served by most inmates").  While shorter than expected, Westmoreland's time in prison under these circumstances provides just punishment and adequate deterrence.

Second, the Court finds that a reduced sentence does not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  While Westmoreland's record warranted a longer sentence, any disparity resulting from a reduced sentence is not unwarranted given the special circumstances he faces in prison as a result of his health and age. Additionally, the presence of the ACCA mandatory minimum suggests that the 15-year sentence was too long.   Any disparity will also be mitigated to some extent by an extended period of supervised release.

Because continued incarceration in Westmoreland's condition would be greater than necessary to serve the purposes of 18 U.S.C. § 3553(a), the Court will grant his Motion.

V.    **SIMILAR CASES**

The Court has considered similar cases decided since the passage of the First Step Act in determining whether granting Westmoreland's motion is consistent with decisions of other courts.

This Court granted compassionate release for a defendant suffering from serious and worsening health problems, including being confined to a wheelchair, and having several chronic illnesses similar to Westmoreland.  *United States v. Bellamy*, No. 15-165(8), 2019 WL 3340699, at *1–4 (D. Minn. July 25, 2019).  He had pled guilty to conspiracy to distribute heroin, and the Court sentenced him to 60 months imprisonment

and four years of supervised release.  *Id.* at *1.  The defendant had served just short of 50% of his sentence when the court granted his release.  *Id.* at *5.

The Middle District of North Carolina granted compassionate release for a defendant suffering from an invasive form of breast cancer who had received grossly inadequate treatment while serving her sentence.  *United States v. Beck*, 425 F. Supp. 3d 573, 588 (M.D.N.C. 2019).  She had been convicted of a drug distribution offense and possession of a firearm in furtherance of a drug trafficking crime, both committed after she had been arrested on similar state charges and released on bond.  *Id.* at 575.  Her original sentence of 189 months was later reduced to 165 months based on a retroactive sentencing guideline amendment.  *Id.*  She had served 76 months, less than 50 percent of her reduced sentence, when the court granted her release.  *Id.*

The Southern District of Illinois granted compassionate release for a 72-year-old defendant who suffered from several medical problems similar to Westmoreland's.  *McGraw*, 2019 WL 2059488, at *2.  Likewise, the District of Arizona granted compassionate release for an 81-year-old defendant suffering from severe heart disease, among other health problems.  *United States v. Johns*, No. 91-392, 2019 WL 2646663, at *2 (D. Ariz. June 27, 2019).  While the defendants in these cases had served longer terms than Westmoreland, both were facing life sentences for serious drug offenses.  *Id.* at *1; *McGraw*, 2019 WL 2646663, at *5.

Courts that have denied similar motions have largely done so because the defendants failed to present sufficient evidence of serious medical problems.[4]  Having considered these decisions, the Court finds that granting Westmoreland's Motion is in line with decisions of other courts.

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Westmoreland's sentence, that Westmoreland does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that the reduction is consistent with the Sentencing Commission's policy statement.   The Court also finds that granting Westmoreland's Motion is consistent with other courts' decisions in similar cases. Therefore, the Court will grant Westmoreland's Motion for Compassionate Release contingent upon him securing the necessary funding for his release plan.

---

[4] *See, e.g., United States v. Ocanas*, 516 F. Supp. 3d 936, 939–41 (D. Minn. 2021) (holding that defendant's health conditions were not sufficient to establish an extraordinary and compelling reason to grant inmate's motion); *United States v. Spencer*, No. 07-174(1), 2021 WL 849565, at *2 n.4 (D. Minn. Mar. 5, 2021) (holding that defendant failed to demonstrate that extraordinary and compelling reasons warranted reduction of his sentence); *United States v. James*, No. 15-255, 2020 WL 3567835, at *4 (D. Minn. July 1, 2020) (finding that while defendant appeared to suffer from significant mental health disorders and certain physical ailments, none of those conditions were identified by the CDC as specifically increasing the risk of developing serious illness from COVID-19); *United States v. Casey*, No. 06-71, 2019 WL 1987311, at *1–2 (W.D. Va. May 6, 2019) (same); *United States v. Gutierrez*, No. 05-0217, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019)  (denying motion where defendant failed to present any medical documentation to support his motion).  Courts have also denied compassionate release where the Section 3553(a) factors outweigh the extraordinary and compelling reasons for granting the motion.  *See United States v. Johnson*, No. 180271, 2021 WL 2498524, at *7–8 (D. Minn. June 3, 2021), *aff'd*, No. 21-2339, 2021 WL 6197342 (8th Cir. 2021).

-14-

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion for Compassionate Release and Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 38] is **GRANTED** contingent on Defendant obtaining county funding**;**

2.      Pending funding for Watchen Homes Board and Care, Westmoreland may be released to a residential reentry center approved by the probation officer;

3.      Defendant shall reside for a period of 180 days in a residential reentry center approved by the probation officer and shall observe the rules of that facility;

4.      Defendant's sentence of imprisonment is reduced to time served, and the BOP shall release Defendant within 10 days of the date of this Order for placement with Watchen Homes Board and Care in Brooklyn Park, Minnesota or to a probation-approved residential reentry center;

5.      Defendant's supervised release term shall begin upon his release and shall continue until January 21, 2028;

6.      Watchen Homes Board and Care and/or the probation-approved residential reentry center is responsible for arranging Defendant's transportation to its facility; and

7.      Defendant's conditions of supervised release, described in the Sentencing Judgment [Docket No. 33], shall remain unchanged.

.

DATED:  January 17, 2023
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge